```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,

          -against-                      MEMORANDUM AND ORDER
                                         19-CR-0123(S-2)(JS)
SPENCER JEAN, a/k/a "CASH,"

                    Defendant.
----------------------------------------X
APPEARANCES
For the Government:  Anthony Bagnuola, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201

For the Defendant:   Joseph J. Ferrante, Esq.
                     Keahon, Fleischer & Ferrante
                     Suite 312 North
                     1393 Veterans Memorial Highway
                     Hauppauge, New York 11788
```

SEYBERT, District Judge:

Defendant Spencer Jean moves for (1) a judgment of acquittal pursuant to Federal Rule of Criminal Procedure Rule 29 and (2) alternatively, for a new trial on all counts pursuant to Federal Rule of Criminal Procedure 33. (Mot., D.E. 110.) The Government opposes the motion in its entirety. (Opp., D.E. 111.) For the following reasons, Defendant's motion is DENIED.

## BACKGROUND

Familiarity with the record is presumed. The Court summarizes the facts and evidence only as necessary for resolution of Defendant's motion.

On July 2, 2019, following a weeklong jury trial, Defendant was convicted of (1) Hobbs Act robbery of a drug dealer, in violation of 18 U.S.C. § 1951(a); (2) discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii); (3) possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (4) conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k); and (5) obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). He was found not guilty[1] of Count Six, illegal possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 3551 et seq. (Verdict Sheet, D.E. 98; Superseding Indictment, D.E. 50.)

I. The Charged Crimes

Briefly summarized, on March 20, 2018, Defendant went to Ryan Goetz's house in Middle Island, New York, purportedly to buy marijuana. At an earlier date, Goetz and Defendant had met in a halfway house.[2] (Tr. 88:5-22.) Goetz knew Defendant as "Cash"

---

[1] Count Six related to a shooting that occurred on November 23, 2016 and is not discussed in this Order. Counts One through Five stemmed from a separate March 20, 2018 shooting and Defendant's subsequent attempts to present a false alibi. (Superseding Indictment.)

[2] Goetz described the halfway house as "an environment where . . . the prison sends you to reacclimate into society before you get released completely." (Tr. 86:4-6.) Goetz had previously been convicted of mail fraud. (Tr. 132:9-133:11.) His time on supervised release went "terrible" and he violated it numerous times. (Tr. 193:17-194:1.) He testified at trial under a non-prosecution agreement. (Tr. 134:9-136:4; 800:11-18.)

2

and did not know his real name.  (Tr. 89:8-13.)  Goetz identified Defendant as "Cash" at trial.  (Tr. 87:14-25.)  Goetz became aware that Defendant had experience selling drugs.  (Tr. 94:25-95:11.)  Goetz himself had been treated for drug use at the halfway house.  (Tr. 86:9-23.)  Based on that information, after both had left the halfway house, Goetz contacted Defendant on March 19, 2018 to offer to sell Defendant marijuana.  (Tr. 96:2-25.)  They arranged for a deal the next day, March 20, 2018.  That night and the following morning, the two called and texted each other.  (Tr. 102:7-106:16.)  On the morning of March 20, while Goetz was in the bathroom, he heard his front door open.  He left the bathroom and saw Defendant standing in his doorway.  (Tr. 106:19-107:5.)  The marijuana was on the kitchen table.  Defendant stated "give me your shit now" and Goetz and Defendant physically struggled over the marijuana.  (Tr. 107:22-108:10.)  In the ensuing altercation, Defendant took out a gun, shot Goetz in the leg, and fled with the marijuana.  (Tr. 108:17-24; 207:25-208:4.)  Goetz called 911 and reported he had been shot.  At trial, Goetz concluded his testimony by stating that there was no doubt in his mind that "Cash"--Defendant--had shot him on March 20, 2018.  (Tr. 207:22-208:4.)

Natasha McPherson had known Defendant since childhood and, like Goetz, knew him to go by "Cash."  They became

romantically involved in 2015.[3] (Tr. 424:7-23.) During their relationship, Defendant sold marijuana. (Tr. 430:1-8.) On March 20, 2018, Defendant told her he was going to see "the kid from the halfway house" about some marijuana. She told him not to go. (Tr. 430:9-11, 19-25; 431:1-22.) Later that same day, Defendant called her and told her to get dressed so they could go out to eat. (Tr. 435:2-12.) He arrived at her home in West Babylon in a dark grey four-door BMW accompanied by his friend "Marv." Defendant told her to drive with Marv and that Defendant would drive her car. (Tr. 435:14-436:11.) During the car ride, she spoke with Defendant via FaceTime, and he told her he "had no choice but to do it because the guy rushed him." (Tr. 439:21-440:3.) Also during the car ride, Marv stated that Defendant "didn't have to shoot him." (Tr. 439:16-20.)

McPherson and Marv arrived at Marv's house and waited. Defendant arrived approximately 10 to 15 minutes later wearing different clothes. When Defendant opened the rear door of the BMW, McPherson saw white bags and smelled marijuana. She then observed Defendant use a white glove to remove a gun from the backseat of the car and hand it to Marv. McPherson and Defendant went to IHOP in Freeport. (Tr. 440:7-441:10.)

---

[3] McPherson's presence was secured by subpoena and she stated she did not want to testify at trial. (Tr. 422:22-423:3.)

4

Notably, much of the above was corroborated by cell phone records of conversations and messages and cell site records tracking Defendant's phone's location. The receipt from IHOP was also admitted at trial.

At IHOP, Defendant first told McPherson he planned to use her as an alibi. (Tr. 441:11-13.) On April 8, 2019, Defendant filed a cursory Notice of Alibi (D.E. 17) stating his intent to establish at trial that he was traveling between Medford, New York and Freeport, New York with an intended stop at the time Goetz was robbed. On April 18, 2019, he filed a Supplemental Notice of Alibi (D.E. 23) "advis[ing] that at the place and approximate time of the alleged crime charged in the [I]ndictment, the [D]efendant was traveling from 3115 Horseblock Road, Medford, New York, towards Middle Island, New York, then changed course and traveled west and south to Freeport New York." In support of his alibi, Defendant intended to call Natasha McPherson.

Upon receiving the alibi information, the Government interviewed McPherson. She admitted that the alibi was false and that Defendant had asked her to testify falsely on his behalf. He contacted her numerous times via Google Voice because "it was secure." (Tr. 444:8-446:15; see, e.g. Tr. 454:21-25.) Defendant's brother also reached out to her several times in an effort to get

her to provide an alibi. (Tr. 456:3-458:7.) She testified to the same before a Grand Jury and at this trial.[4]

## II. Procedural History

Defendant was initially indicted on March 7, 2019, on the charges related to the Goetz robbery. (Indictment, D.E. 1.) Attorney Richard A. Finkel was appointed to represent him. (CJA Appt., D.E. 12.) On April 20, 2019, after the matter was reassigned to the undersigned from Hon. Joseph F. Bianco, the Government filed a Superseding Indictment which included the additional charges related to the false alibi and obstruction with McPherson. (Superseding Indictment.) On May 3, 2019, Finkel moved to withdraw as Defendant's attorney and attorney Richard D. Haley was appointed. (Minute Entry, D.E. 42.)[5] After motion practice not relevant here, this Court set a trial date of June 17, 2019, in order to allow Mr. Haley adequate time to prepare. (Minute Entry, D.E. 62.) Jury selection took place on June 17, 2019 (Minute Entry, D.E. 76) and the trial commenced on June 24, 2019. Defendant was found guilty of five of six counts. On July 18, 2019, at Defendant's request, this Court appointed him a new

---

[4] After the trial, despite express warnings from the Court, Defendant continued to attempt to contact McPherson. (Status Report Concerning Investigation of Post-Conviction Conduct, D.E. 105.)

[5] Finkel testified at trial regarding the obstruction and false alibi charges.

attorney, Joseph J. Ferrante, for any post-trial motions.  (CJA Appt., D.E. 103.)

After being granted extensions, Defendant submitted this post-trial motion on October 28, 2019.  The Government opposed on November 27, 2019, and Defendant replied on December 11, 2019 (Reply, D.E. 112).

DISCUSSION

I. Legal Standards

A. Rule 29 Motion for a Judgment of Acquittal

Under Federal Rule of Criminal Procedure Rule 29(a), "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  "Under Rule 29, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Kenner, No. 13-CR-0607, 2019 WL 6498699, at *3 (E.D.N.Y. Dec. 3, 2019) (internal quotation marks and citations omitted; emphasis in original) (collecting United States Supreme Court and Second Circuit cases).  "[V]iewing the evidence in the light most favorable to the government means drawing all inferences in the government's favor and deferring to the jury's

assessments of the witnesses' credibility." Id. (internal quotation marks and citation omitted).

   B.  Rule 33 Motion for a New Trial

Under Federal Rule of Criminal Procedure Rule 33(a), "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." This Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." United States v. Aguiar, 737 F.3d 251, 264 (2d Cir. 2013) (internal quotation marks and citation omitted). "A district court may grant a Rule 33 motion only in extraordinary circumstances, and only if there exists a real concern that an innocent person may have been convicted." Kenner, 2019 WL 6498699 at *3 (internal quotation marks and citations omitted). Rule 33 gives this Court "broad discretion" but "that discretion must be exercised 'sparingly,' and relief under the rule should be granted 'only with great caution and in the most extraordinary circumstances.'" United States v. Mayes, No. 12-CR-0385, 2014 WL 3530862, at *1 (E.D.N.Y. July 10, 2014) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).

II. Rule 29 Motion for a Judgment of Acquittal

Defendant moves for a judgment of acquittal, arguing that the testimony of Government witnesses Goetz and McPherson was not credible. He contends that "Goetz was the only eyewitness to

8

the events that took place in his house. Re-reading his testimony leaves nothing to the imagination. He is professional liar. His testimony should be wholly disregarded. He played a big role at trial. To have a conviction stand based on his testimony would be a grave injustice." (Mot. at 18.) As to McPherson, who "testified under subpoena. She did not want to be there. She had a history of mental issues that were excluded under the guise of irrelevance, but [Defendant] disagree[s] with that assessment. [Defendant] believe[s] that some of the evidence provided showed that she very often alerted [Defendant] to her instability towards him and herself." (Mot. at 18.)

At the outset, "[t]he proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury[, ] not in a motion for a judgment of acquittal." United States v. Truman, 688 F. 3d 129, 139 (2d Cir. 2012) (internal quotation marks and citations omitted). Here, Defendant challenges witness credibility and points to what he perceives as significant issues with their testimony. For example, he places great emphasis on Goetz's testimony regarding the date Goetz created contact information for Defendant in Goetz's phone. He asserts that Goetz could not have created the contact in May 2017, as the phone indicated, because Defendant was only in the halfway house from 2015 to 2016. (Mot. at 15-16.) But the jury heard Goetz's uncertainty about dates--when the Government asked

9

when he had lived in the halfway house, he responded he was "unsure." (Tr. 85:21-22.) And while defense counsel extensively crossed Goetz on issues with the halfway house, attempting to discredit his assertion that over the course of approximately four months he never learned "Cash's" real name, (see Tr. 167:5-171:6), he did not attack the phone contact creation date. Defendant also argues that while Goetz said they planned the drug deal the night before March 20, there are no phone records documenting that. (Mot. at 16-17.) However, there are numerous documented contacts on the morning of March 20 through the time of the shooting. These minor discrepancies, after the passage of time, do not warrant a judgment of acquittal.

As to McPherson, Defendant similarly nitpicks her account of the timing of several phone calls that had taken place over a year earlier. (Mot. at 18.) He attacks her assertion that he told her to create Google Voice numbers because they were "secure" because "[h]ad she been honest she would have told the jury that the google phone number is only preferable because if it has a more local area code, that it would cost less to the inmate and his family." (Mot. at 19.) Notwithstanding that Defendant provides no support for this assertion other than his own apparent belief about the supposed benefits of using Google Voice numbers while incarcerated, again, Defendant had ample opportunity to cross McPherson on these issues at trial.

Despite these issues, "[a] reasonable jury could believe [Goetz] and [McPherson], irrespective of the minor contradictions in their respective testimonies." United States v. Rodriguez-Santos, No. 18-CR-0298, 2019 WL 2407424, at *5 (D.P.R. June 6, 2019) (collecting cases and denying Rule 29 and Rule 33 motion). "When testimonial inconsistencies are revealed on cross-examination, the jury [i]s entitled to weigh the evidence and decide the credibility issues for itself." United States v. O'Connor, 650 F.3d 839, 855 (2d Cir. 2011) (jury may properly credit a witness "who may have been inaccurate, contradictory and even untruthful in some respects [but] was nonetheless entirely credible in the essentials of his testimony") (internal quotation marks and citations omitted). Moreover, despite Goetz and McPherson having no relationship or apparent contact, their testimony largely corroborated each other's accounts of March 20's events.

Furthermore, in addition to being able to evaluate any alleged inconsistencies in the witnesses' testimony, the jury was aware of issues touching on their credibility. Both the Government and defense counsel exhaustively detailed Goetz's prior convictions, bad acts, fraud, and the fact that he was testifying pursuant to an agreement with the Government. McPherson's mental health issues were before the jury (Tr. 473:6-17) and counsel vigorously cross examined her on any potential bias or ill will

toward Defendant based upon their failed romantic relationship (Tr. 479:8-486:16). These issues were also discussed by defense counsel at length during closing statements. (Tr. 782:17-788:6.) Armed with this background knowledge, the jury chose to credit their testimony.

Finally, the verdict demonstrates that the jury assessed the evidence as to each count and incident--the jury acquitted Defendant on the unrelated November 2016 shooting that did not involve Goetz or McPherson (although McPherson did testify as to conversations she had with Defendant about the shooting). The jury thus made a credibility determination regarding these witnesses' accounts of the charged crimes, and it is not this Court's province to disturb it. See United States v. O'Connor, 650 F. 3d 839, 855 (2d Cir. 2011). Accordingly, Defendant's motion for a judgment of acquittal is DENIED.

III. Rule 33 Motion for a New Trial

Defendant argues that the Government committed a Rule 16 violation and he was "denied a fair trial because the government failed to disclose their cell site expert in sufficient time (at trial with expert witness already testifying and received as an expert) with sufficient information, with sufficient results, sufficient exhibits, bases for his conclusions, and caused a

surprise at trial that no attorney could predict much less handle." (Mot. at 5.)[6]

Federal Rule of Criminal Procedure Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use . . . during its case-in-chief at trial . . . [t]he summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

On March 22, 2019, the Government provided discovery to Defendant, including but not limited to cell site location data. (Rule 16 Letter, D.E. 15.) The discovery included T-mobile records obtained by a warrant. Essentially, the records established the location of Defendant's phone on March 20, 2018--the day of the Goetz robbery. This location data tended to show that Defendant's phone travelled from his home in Westbury, New York to Goetz's home in Middle Island, New York. The location of Defendant's phone corresponded with texts and calls to Goetz's phone. (Opp. at 6.)

---

[6] The Court finds that Defendant's challenge to the cell site evidence and expert testimony is grounded in unfairness. Even though he attacks cell site data generally in his Reply (see Reply at 4), he does not allege that the evidence was insufficient to convict him. Thus, the Court addresses the cell site arguments only as they pertain to a Rule 33 motion for a new trial.

13

On April 17, 2019, at a status conference before Judge Bianco, Defendant's first attorney Finkel requested "the expert reports--the cell tower information is going to be very important to us . . . so I'd like to know when we're going to get that from the Government." (April 17 Tr., D.E. 109, 12:5-9.) The Government indicated it would turn the information over "two weeks before trial . . . maybe by the end of next week." The Government explained that it did not currently have the report. (April 17 Tr. 12:10-20.) Judge Bianco ordered the Government to turn the report over "immediately" if they received it before the estimated date.

On April 26, 2019, the Government provided information about several potential expert trial witnesses. The Government explained that

> David M. Magnuson is an analyst with Sierra Cellular Analysis Group and a former Special Agent with the FBI. Mr. Magnuson's curriculum vitae is attached as Exhibit "A" and outlines his training and experience related to the analysis of cellular phone records and data.

Magnuson was

> expected to testify about certain geolocation data obtained via judicial orders associated with the cellular telephone used by the defendant in or about and between March 2018 and May 2018. The data that Mr. Magnuson and/or Special Agent Wright will use to conduct his analysis was provided to the defense on March 22, 2019 under Bates-numbers [specifying relevant documents and records].

14

(Rule 16 Letter, D.E. 31, at 2.)

On June 11, 2019, the Government made a motion in limine to admit the cell site location data that had been identified in its March 22 initial disclosure and its April 26 letter describing the basis for Magnuson's opinions. (Motion in Limine, D.E. 73.) Defendant did not oppose the motion. (Response, D.E. 74.)

On Saturday, June 29, 2019, after the trial had commenced, Magnuson completed summary slides he intended to use while testifying. (Opp. at 15, Reply at 3.) That same day, the Government provided the slides to defense counsel by email pursuant to Federal Rule of Evidence 1006 (requiring the Government to "make the originals or duplicates available for examination or copying, or both, by [the defendant] at a reasonable time and place."). On Monday, July 1, the Government called Magnuson as a witness. (Tr. 665.) When the Government offered the slides into evidence, defense counsel stated

> Your Honor, it is certainly not my desire or intent to delay this proceeding. I might add and the fault may be mine. We have received, prior to today, the Government's Rule 16 discovery. Apparently, this particular document was provided to me via an email a few days ago. I have not, frankly, with one exception, returned to my office in the last few days. I leave this courtroom. I go return home. I review the file for the next day. So I have no doubt that the Government provided this to me in the last few days. The summary is the same. We've received up to this point all of the underlying information. We just haven't received the summary. I advise the

15

> Court of this fact because I have not had the
> opportunity to review this with my client for
> that reason, and the fault lies with me.

(Tr. 683:3-19.) Counsel requested 15 minutes to review the information with Defendant, and the Court allowed a break in the proceedings. When the trial resumed, the Court asked if Defendant had had an opportunity to review the documents, and Counsel answered yes. (Tr. 683:20-685:14; 687:5-7.) Despite not receiving the slides, Counsel said he had personally visited the Middle Island cell tower identified in the data before trial. (Tr. 689:21-25.) He further stated that they were "not asking for additional time to review the document" but that there were "aspects of the document that [they] would object to that, frankly, draw conclusions that the jury would have to draw as relates to some material facts." (Tr. 687:8-12.) In response to those objections, the parties agreed to redactions. (Tr. 692:2-693-21.) Counsel did note, however, his opinion that the slides were "a belated delivery of what [he] clearly regard[ed] as 3500 material" (Tr. 687:3-4) and that "it's one thing to provide the underlying data. It's another thing to provide a summary of those hundred and some odd pages and not allow the defense sufficient time to compare the underlying data with the summary." (Tr. 688:5-9.)

Thus, on March 22 and April 26, well before trial, the Government provided Defendant with: the relevant cell site records, Magnuson's resume, the expected basis of Magnuson's

16

testimony, and the information and records that would underlie that testimony. The slides, turned over during trial, were a summary aid. Defendant objected to some of the content; the Government agreed to redactions. Despite Defendant's current arguments, it is readily apparent to the Court that Defendant was well aware of what both Magnuson's testimony and any accompanying records or slides would show: that his phone's location corresponded with the Goetz robbery and timeline. As far back as April, Defendant proposed an alibi that comported with the cell site data. He continued to argue that alibi right through closing statements. (Tr. 793:7-794:22.)

Even if the Court were to conclude that there was a technical Rule 16 violation, it would not compel a new trial. Defendant observes that "the trial court has broad discretion to fashion rulings that result in the admission of expert testimony on a playing field fair to the opponent." (Mot. at 6, citing United States v. Laster, 313 F. App'x 369, 372-73 (2d Cir. 2009) (the defendant's "argument on appeal amounts to a disagreement with the district court regarding the adequacy of the disclosures. Such evidentiary determinations are left to the discretion of the trial court, and [the defendant] has not shown that the district court abused its discretion here.).) Here, as detailed above, the Court allowed Defendant the time he requested to review the information. It also permitted his requested redactions.

In United States v. Douglas, 336 F. App'x 11, 13-14 (2d Cir. 2009), the Government conceded it should have given the defendant advance notice of an expert's testimony and the study it relied upon. The Second Circuit held that despite the Government's failure,

> [t]he district court, however, averted the possibility of a due process violation by giving defense counsel additional time to review the 2006 study and to prepare for the cross-examination of [the expert]. Defense counsel did not request any more time beyond what was given; nor has [the defendant] adequately explained on appeal how he was substantially prejudiced despite the district court's efforts to rectify any possible disadvantage. Therefore, [in ruling on the defendant's post-trial motions,] the district court properly refused to disturb the jury's verdict based on the Government's failure to turn over Rule 16 information related to [the expert's] testimony.

Id. (citing United States v. Tin Yat Chin, 476 F.3d 144, 146 (2d Cir. 2007) (after the Government's nondisclosure, district court allowed defense counsel sufficient time to prepare for expert witness mid-trial and the defendant identified no prejudice from not receiving a longer continuance)). Here, the Court does not believe the Government violated Rule 16. Even if it had, however, the Court gave defense counsel adequate time to prepare, and Defendant raised no objection to that process at trial.[7]

---

[7] The Court notes that Judge Bianco ordered the Government to turn over the reports in April. The Government did not do so. In the interim, attorney Finkel withdrew and this Court

18

Accordingly, any purported violation does not establish the extraordinary circumstances necessary to disturb the jury's verdict and grant Rule 33 relief.

Additionally, for the same reasons already discussed as to Defendant's Rule 29 motion, the Court finds that any arguments regarding Goetz's and McPherson's testimony do not warrant a new trial. Thus, Defendant's motion for a new trial under Rule 33 is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion (D.E. 110) is DENIED in its entirety.

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated: January   7  , 2020  
       Central Islip, New York

---

appointed attorney Haley. Ultimately, the Government gave the slides to Haley approximately 48 hours before their intended use at trial. While the Government could have made efforts to get the slides sooner, they turned them over as soon as they received them from their expert. For the reasons already stated, the belated disclosure does not warrant a new trial.

19